**GENERAL MOTORS CORPORATION,**
Appellant and Cross-Appellee (Em-
ployer-Appellant, below),

v.

John CRISHOCK et al., Appellees and Cross-
Appellants (Claimants-Appellees, below),

and

Employment Security Commission
of Delaware.

**CHRYSLER CORPORATION, Appellant**
and Cross-Appellee (Employ-
er-Appellant, below),

v.

Joe E. McBRIDE et al., Appellees and Cross-
Appellants (Claimants-Appel-
lees, below),

and

Employment Security Commission
of Delaware.

Supreme Court of Delaware.

Jan. 4, 1972.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for General Motors Corp.

Harvey B. Rubenstein, Wilmington, for John Crishock, Frank Fusca and Joseph J. Kripplebauer.

Jay H. Conner, Wilmington, for Employment Security Comm. of Delaware.

Carl Schnee, of Tybout, Redfearn & Schnee, Wilmington, for Chrysler Corp.

Harvey B. Rubenstein, Wilmington, for Joe E. McBride, Charles B. Jarrell, and Donald P. Stilwell.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

These appeals have been consolidated because the basic question presented for decision is the same in each.

The question requires a determination of whether employees of Chrysler Corporation and General Motors Corporation were entitled to unemployment compensation benefits in addition to regular holiday pay under the facts and under the Delaware Unemployment Compensation Law, especially 19 Del.C. §§ 3302(15) [1] and 3302(17) (E).[2]

The claimants are three employees of each corporation who have maintained these actions as test cases. The determinative issue is whether the holiday pay received by the claimant-employees was paid during a "period of unemployment", as that term is used in § 3302(17) (E), under the circumstances of these cases.

*In the Chrysler case:* The claimants were regularly employed prior to the week of December 22, 1969. In accordance with prior notice to all employees, on Monday and Tuesday, December 22 and 23, 1969, the plant was temporarily shutdown and the claimants did not work. Wednesday, Thursday, and Friday, December 24 through 26 were designated as holidays with pay under the Labor Agreement in effect. On Monday and Tuesday, December 29 and 30, the plant remained shutdown, in accordance with the prior notice, and the claimants did not work. Wednesday, Thursday, and Friday, December 31 through January 2, 1970 were holidays with pay under the prevailing Labor Contract. The plant remained closed, in accordance with the prior notice, during the week commencing January 5, 1970 and the claimants did not work. The plant opened the following week and the claimants returned to work. The chronology may be depicted as follows:

| December | [22 | 23] | 24 | 25 | 26 | 27 |
|---|---|---|---|---|---|---|
| | [Shutdown] | | H | H | H | Sat. |
| 28 | [29 | 30] | 31 | 1 | 2 | 3 |
| Sun. | [Shutdown] | | H | H | H | Sat. |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| Sun. | [S h u t d o w n] | | | | | Sat. |

The claimants received pay for the six holidays. They now seek unemployment compensation for the same period.[3] The Employment Security Commission granted the benefits sought;[4] upon appeal by

1. 19 Del.C. § 3302(15) provides that no services may be performed and no "wages" may be received if one is to be considered "unemployed" and entitled to unemployment compensation benefits under the Delaware Law.

2. 19 Del.C. § 3302(17) (E) provides that the word "wages", as used in the Law, does not include "Holiday pay paid during any period of unemployment."

3. This Court again deplores the unacceptable delays in the consummation of administrative cases involving workmen's benefits. We have commented frequently on undue delays in disposition of workmen's compensation cases. These unemployment compensation cases have taken two years to reach this stage. This, too, is unacceptably long for the adjudication of workmen's statutory benefits. The Employment Security Commission and all others concerned are urged to take remedial action toward a more speedy disposition of this type of case.

4. The Commission formulated the question for decision as follows:
   "Does a period of unemployment, initiated by a layoff by the employer due to lack of work, which before recall of the

Chrysler the Superior Court affirmed. Chrysler now appeals that judgment,[5] contending that, under the judgment below, the claimants will be paid twice for the holiday periods, contrary to the letter and spirit of the Unemployment Compensation Law.

\* \* \*

*In the General Motors case*: The claimants were regularly employed prior to the week of December 22, 1969. On Monday and Tuesday, December 22 and 23, 1969, the plant was in operation and the claimants worked. Wednesday, Thursday, and Friday, December 24 through 26, were designated as holidays with pay under the Labor Agreement. In accordance with prior notice, on Monday and Tuesday, December 29 and 30, the plant was shutdown and the claimants did not work. Wednesday, Thursday, and Friday, December 31 through January 2, 1970, were holidays with pay under the prevailing Labor Contract. The plant resumed operation and the claimants returned to work on Monday, January 5. The chronology may be depicted as follows:

| December | 22 | 23 | 24 | 25 | 26 | 27 |
|---|---|---|---|---|---|---|
| | W | W | H | H | H | Sat. |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| Sun. | [Shutdown] | | H | H | H | Sat. |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| Sun. | W | W | W | W | W | Sat. |

The claimants received pay for the six holidays. They now seek unemployment compensation for the entire week commencing December 29, including the three paid holidays therein. The Employment Security Commission granted the benefits sought;[6] upon appeal by General Motors, the Superior Court affirmed. General Motors now appeals the judgment, the crux of its position also being that, under the judgment below, the claimants will receive double compensation for the same holiday period contrary to the letter and spirit of the Law.

\* \* \*

As we pointed out in Employment Security Commission v. Watts, Del.Supr., 254 A.2d 230 (1969), it was the rule in Delaware, until 1961, that all pay received for paid holidays constituted "wages" under the Unemployment Compensation Law. See Moore v. Delaware Unemployment Compensation Commission, Del.Super., 3 Storey 209, 167 A.2d 76 (1961). In 1961, however, the Statute was amended and 19 Del.C. § 3302(17) (E) was enacted to provide, as we have noted, that "Holiday pay paid during any period of unemployment" shall not be deemed "wages" under the Law. It seemed obvious to us in *Watts*, and it seems obvious to us now, that the Amendment of 1961 was a direct legislative reaction to the *Moore* decision.

■ Insofar as the Chrysler case is concerned, § 3302(17) (E) is clear and unambiguous. We find no valid reason for not applying it to this case; and we have no difficulty in reaching the result that necessarily follows: the Chrysler plant was temporarily shutdown and the claimants were out of work both before and after the holidays. Clearly, therefore, the claimants

---

employee overlaps a holiday or holidays, so declared under contract or practice, constitute a single period of unemployment such as to satisfy the provisions of Section 3302(17) (E) \* \* \*."

In granting benefits, the Commission concluded:

"Inasmuch as each claimant was in a period of unemployment which commenced as a result of layoff by the employer and ended with a return to work scheduled by the employer, under the provisions of Section 3302(17) (E), holiday pay paid to the claimants was in fact and in law paid during a period of unemployment,

and thus does not constitute *wages* within the meaning of Section 3302(15)."

5. The claimants cross appeal in both cases on the ground that there is a fatal jurisdictional defect in the failure of the Employers to join the Employment Security Commission as a party. We pass the procedural question and decide the merits of the appeal in view of the importance of the question presented.

6. The findings and conclusions of the Commission were substantially the same as in the Chrysler case.

received pay for those holidays "during" a "period of unemployment" and, by virtue of § 3302(17) (E), the pay thus received did not constitute "wages" such as would otherwise bar benefits under § 3302(15) of the Law.

■ Chrysler makes several arguments in its unsuccessful effort to avoid the application of § 3302(17) (E): it contends that our public policy, as announced in our Law (§ 3301), is to protect the working man from involuntary unemployment only. The short answer is that § 3302(17) (E) is a later legislative expression unequivocally to the contrary insofar as paid holidays are concerned. It is also contended by Chrysler that the claimants were actually employed on these holidays, though not working, because the paid holidays were negotiated in the Labor Agreement as "emoluments of employment"; that the claimants actually performed "services" on the holidays in question, although they did not work, because "services" include such "emoluments of employment"; that, therefore, the holidays were not in a "period of unemployment". It is argued that these concepts are consistent with *Moore*, with the action of the General Assembly in enacting § 3302(17) (E), and with the views of this Court in *Watts*. We cannot agree. These concepts are too tenuous and theoretical, in our opinion, to constitute an acceptable escape from the plain scope and purpose of § 3302(17) (E). Anything stated in *Moore* inconsistent herewith must be deemed outmoded and superseded by the subsequent enactment of the 1961 Amendment, especially insofar as *Moore* indicated that double compensation in the form of unemployment benefits and holiday pay for the same holiday was against the policy of the Law. The legislative intent to permit such double compensation is clear and unequivocal in § 3302(17) (E).

In *Watts*, we stated that double compensation in the form of unemployment benefits to employees enjoying normal vacations, not incident to layoffs, is contrary to the public policy of our Law. Chrysler

relies heavily upon that statement. We do not deem it to be contrary to the conclusion we reach herein.

It is held, therefore, that § 3302(17) (E) applies to the holidays involved in the Chrysler case and that the claimants are entitled to compensation therefor, holiday pay for the same period notwithstanding.

\* \* \*

■ The General Motors case differs from the Chrysler case in that there was no period of unemployment immediately after the holidays, unless the following Saturday and Sunday may be counted as days of unemployment. General Motors contends that a normal week-end, preceding a regular week of work, may not be so considered, in the light of common sense and the philosophy of the Law. At first, this contention appeals to reason in determining the meaning of "during" a "period of unemployment" as that term is used in § 3302(17) (E); but the judicial and legislative history of § 3302(17) (E) defeats it. In the *Moore* case, the paid holiday in controversy was Friday, July 4, followed by a week-end and a regular work week. In its concededly direct reaction and intent to change the result of the *Moore* case, the General Assembly used the phrase "during any period of unemployment" in § 3302(17) (E), notwithstanding the fact that the *Moore* case involved but one week of unemployment and the holiday in question occurred on Friday of that week, followed by a week-end and a return to work. It seems obvious to us that, by adopting the language "during any period of unemployment" in addressing itself to the result in the *Moore* case, the General Assembly intended the "period of unemployment" contemplated by § 3302(17) (E), during which holiday pay shall not be deemed wages, to begin upon the commencement of a temporary layoff and to end upon the scheduled return to work. The Commission so held; the Superior Court agreed; and so do we.

General Motors suggests a technical approach to the meaning of the words "pe-

riod of unemployment", as used in § 3302 (17) (E), by applying thereto the definitions of § 3302(15) [7] and the limitations of § 3313(c) [8] so as to eliminate the holidays themselves in the computation of the "week" of unemployment. We find this contention untenable in the light of the foregoing judicial and legislative history of § 3302(17) (E). The definitions and limitations of § 3302(15) and § 3313(c) are meaningless when applied to the word "unemployment" in § 3302(17) (E), a consequence which we must avoid in the interpretation of any statute. For example, in the instant case, an "unemployment" under § 3302(15) could be deemed either (1) to exist because the holiday pay did not constitute "wages" and therefore there were no wages for the entire week; or (2) not to exist because the holiday pay constituted "wages", and the wages to these claimants then exceeded the "weekly benefit amount plus $2." A definition having such consequences is useless.[9]

Accordingly, we conclude that § 3302(15) and § 3313(c) are not applicable in the construction of the term "period of unemployment" as used in § 3302(17) (E); that the only reasonable construction of the term, as there used, is the period between the commencement of a temporary layoff and the time of return to work. As so construed, we find § 3302(17) (E) applicable to the General Motors case and the claimants entitled to compensation, holi-day pay for the same period notwithstanding.

\* \* \*

For the reasons stated, the judgments below are affirmed.

---

7. 19 Del.C. § 3302(15) provided at the time:
   "(15) 'Unemployment' exists and an individual is 'unemployed'
   "in any week during which he performs no services and with respect to which no wages are payable to him, or
   "in any week of less than full-time work if the wages payable to him with respect to such week are less than his weekly benefit amount plus $2."

8. 19 Del.C. § 3313(c) provided at the time:
   "Each eligible individual who is *unemployed in any week* shall be paid with respect to such week a sum equal to his weekly benefit amount less that part of the wages (if any) payable to him with respect to such week which exceeds $7. Such sum, if not an even dollar shall be raised to the next whole dollar." (Emphasis supplied)

9. This case demonstrates, we think, the desirability of a complete review of the Unemployment Compensation Law by the General Assembly. Statutory ambiguities and inconsistencies resulting from piecemeal amendments of the Law are causing confusion and delay.