GENERAL MOTORS CORPORATION, a corporation of the State of Delaware, Defendant Below, Appellant/Cross–Appellee,

v.

LOCAL 435 OF the INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMER-ICA, Plaintiff Below, Appellee/Cross–Appellant.

Supreme Court of Delaware.

Submitted: Nov. 10, 1987.
Decided: Aug. 4, 1988.
Rehearing Denied Sept. 20, 1988.

Thomas L. Morrissey (argued), and Laurence Reich, of counsel, of Carpenter, Bennett & Morrissey, Newark, N.J., Richard G. Elliott, Jr. and William W. Bowser of Richards, Layton & Finger, Wilmington; Eugene L. Hartwig and David M. Davis, of counsel, of General Motors Corp., Detroit, Mich., for defendant below, appellant/cross-appellee.

David R. Hodas (argued), of Potter, Carmine and Hodas, Wilmington, for plaintiff below, appellee/cross appellant.

Before HORSEY, MOORE and HOLLAND, JJ.

HORSEY, Justice:

The question presented in this labor-management dispute is whether management may exercise a collective bargaining agreement right to withhold holiday pay benefits as an offset for state unemployment benefits claimed by employees during a layoff over a holiday season. Defendant, General Motors Corporation ("GM"), appeals from a January 22, 1987, final judgment of the Superior Court in the amount of $989,597, with interest, awarded to plaintiff, Local 435 of the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("Local 435"). GM also appeals from several interlocutory rulings of the Court rendered August 8, 1985, on the parties' cross-motions for summary judgment. Therein, the Court found GM to have unlawfully withheld holiday pay from certain of the Local members, the amount of which was calculated in the 1987 final judgment under appeal.

The judgment represents the aggregate amount of holiday pay withheld by GM from those of the Local 435 members employed at GM's Wilmington, Delaware assembly plant who elected, over the 1980–81 Christmas–New Year season, to claim state unemployment benefits for the layoff period. Superior Court declared the National Collective Bargaining Agreement's (the "National Agreement") offset provision upon which GM relied to be unenforceable because it was contrary to Delaware's Unemployment Compensation Law as it then existed. 19 *Del.C.*, c. 33 (1974) (amended 1981). The Court found the collective bargaining provision to constitute either an unlawful "waiver" of compensation benefits by the employees or an act of "discrimination" by GM against its Local 435 employees seeking unemployment benefits. We agree with the Court's finding of the Agreement to be violative of chapter 33, and, accordingly, affirm the judgment, rejecting GM's appeal.

Local 435 cross-appeals from Superior Court's denial of its claim for liquidated (as well as compensatory) damages under the Delaware Wage Payment and Collection Act (the "Wage Payment Act"). 19 *Del.C.*, c. 11 (1979) *amended by* 64 *Del.Laws*, c. 226 (1984). The Local contends that GM's withholding or offset of holiday pay for unemployment benefits claimed for the holiday period of the plant shutdown is in violation of the Wage Payment Act. Superior Court disagreed, finding the term "wages" as then defined under sections 1103(d) [1] and 1107 of the Wage Payment Act not to include holiday pay. We agree and therefore we must also reject the Local's cross appeal.

### I

### A

The controversy between the parties turns on the meaning and enforceability as a matter of public policy of paragraph 213a of the National Agreement entered into by GM and Local 435's International Union in 1979.[2] As noted, the dispute arises from

---

1. Section 1103(d) provides, in part:

   If an employer, without any reasonable grounds for dispute, fails to pay an employee wages, as required under this chapter, the employer shall, in addition, be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller....

   19 *Del.C.* § 1103(d) (1979).

   Section 1103 was amended, effective February 7, 1984. Subsection (d) was redesignated as present subsection (b) but was left substantially unchanged by the amendment. Unless otherwise noted, reference herein to 19 *Del.C.*, c. 11, is to the statute[s] as in existence at the time the instant dispute arose.

2. On or about September 14, 1979, Local 435's international union entered into a collective bargaining agreement establishing the terms and conditions of employment for GM'S hourly employees (the "National Agreement"). Paragraphs 203–213 of the National Agreement are the holiday pay provisions applicable to hourly employees. Paragraph 203 designates December 24, 1980 through January 2, 1981 as the Christmas holiday period and provides that, "Employes shall be paid for specified holidays in each of the Christmas holiday periods." Paragraph 205 then provides, "Employes eligible under these provisions shall receive eight hours pay for each of the holidays specified in Para-

GM's shutdown of its Wilmington assembly plant for twenty-one days from December 15, 1980, through January 4, 1981. GM had designated eleven of those twenty-one days, December 24 through January 3, as paid holidays for GM'S hourly employees. At all times relevant to this dispute, holiday pay was not legislatively defined to constitute "wages" under the Unemployment Compensation Law. *See* 19 *Del.C.* § 3302(18)(E) (1974).[3] Therefore, GM's employees were entitled to claim unemployment compensation benefits for the period of the shutdown that included paid holidays. *See* 19 *Del.C.* §§ 3302(16), 18(E), and 3314 (1974). However, paragraph 213a of the National Agreement provided:

> It is the purpose of the Holiday Pay Provisions in Paragraphs (203) through (213) of this Agreement to enable eligible employes to enjoy the specified holidays with full straight time pay. If, with respect to a week included in the Christmas Holiday Period, an employe supplements his Holiday Pay by claiming and receiving an unemployment compensation benefit, or claims and receives waiting period credit, to which he would not have been entitled if his Holiday Pay had been treated as remuneration for the week, the employe shall be obligated to pay to the Corporation the lesser of the following amounts:

> (a) an amount equal to his Holiday Pay for the week in question, or,

> (b) an amount equal to either the unemployment compensation paid to him for such week or the unemployment compensation which would have been paid to him for such week if it had not been a waiting period.

> The Corporation will deduct from earnings subsequently due and payable the amount which the employe is obligated to pay as provided above.

On December 3, 1980, GM gave its hourly employees notice that it intended to implement the payroll deductions described in paragraph 213a. As a condition of any hourly employee's receiving full holiday pay, GM required its hourly employees to execute a written authorization permitting management to offset the amount of any unemployment compensation received by the employee by the amount of holiday pay otherwise payable.[4] Should an employee refuse to execute the authorization form, GM would withhold $150.00 (the maximum unemployment compensation receivable by an employee) for each of the weeks ending December 27, 1980 and January 3, 1981, unless the employee signed an affidavit prepared by GM stating that the employee would not claim unemployment compensation benefits.[5]

---

graph (203), computed at their regular straight time hourly rate exclusive of overtime premium."

**3.** Subsequent to the events leading to this lawsuit, the Delaware General Assembly in 1981 amended 19 *Del.C.* § 3302 to redefine "wages" to include holiday pay for the purposes of determining qualification for receipt of unemployment compensation. 63 *Del.Laws*, c. 76, codified at 19 *Del.C.* § 3302(17). Unless otherwise noted, all references herein to 19 *Del.C.*, c. 33 are to the statute laws in existence prior to the effective date of the June 1981 amendments, July 1, 1981.

**4.** GM's authorization form provided:

I hereby authorize General Motors Corporation to make payroll deductions of amounts determined under paragraph 213(a) of the GM–UAW National Agreement with respect to any week included in the Christmas Holiday Period for which I claim and receive an Unemployment Compensation (UC) benefit and which would result in an overpayment of Holiday Pay had such Holiday Pay been treat-

ed as remuneration by the State UC agency for such week.
This authorization of deduction is executed for my own benefit for the purpose of assuring that I will receive Holiday Pay consistent with the intent and purpose of the GM–UAW National Agreement.
The amount of the reduction of an employee's holiday pay would equal the amount by which his or her combined holiday pay and unemployment compensation benefits exceeded the amount of full straight-time pay he or she would have received had he or she worked over the given period.

**5.** The affidavit provided:
For purposes of receiving Holiday Pay pursuant to Paragraph (213a) of the GM–UAW National Agreement, this is to certify that I did/will not claim or receive unemployment compensation benefits for state benefit weeks ending December 27, 1980, and January 3, 1981.
I understand that falsification of this certification will subject me to appropriate disciplinary action for violation of Plant Rules.

### B

Local 435, after first pursuing an unsuccessful suit in federal court to obtain injunctive and other relief on federal as well as state grounds,[6] commenced this state court action in 1983. The Local sought to have paragraph 213a of the National Agreement declared void under Delaware law because it was contrary to Delaware's Unemployment Compensation Law. 19 *Del.C.*, c. 33 (1974). As noted, Local 435 also invoked the Delaware Wage Payment Act, 19 *Del.C.*, c. 11 (1979), claiming liquidated, as well as compensatory, damages for GM's unlawful withholding of its employees' holiday pay benefits.

The three issues presented by this appeal are:

(1) whether paragraph 213a of the National Agreement, by authorizing GM to offset holiday pay benefits for the amount of any unemployment compensation claimed and received by its employees over the holiday season, violates section 3371(c)[7]

of the Delaware Unemployment Compensation Law;

(2) whether holiday pay benefits constitute wages as then defined under the Wage Payment Act;

(3) whether section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1947), preempts Delaware law.

We address the three issues in the order stated.

### II

### A

Over twenty-five years ago, Superior Court (affirming a ruling of the Unemployment Compensation Commission) held that holiday pay must be considered to be wages for the purposes of Delaware's Unemployment Compensation Law. *Moore v. State of Delaware Unemploy. Comp. Comm'n.*, Del.Super., 167 A.2d 76 (1961).

**6.** While this case raises exclusively state law questions, this action can be better understood against a backdrop of the earlier federal litigation. After GM in December 1980 announced its intention to implement ¶ 213a in connection with the impending layoff, Local 435 filed suit in the United States District Court for the District of Delaware seeking injunctive relief. *Local 435 v. General Motors Corp.*, D.Del., No. 80–578 (filed Dec. 11, 1980). Local 435 sought a temporary restraining order enjoining the implementation of the National Agreement. Count I of the complaint alleged that under § 301 of the Labor Management Relations (Taft–Hartley) Act, 29 U.S.C. § 185 (1947), GM's proposed application of ¶ 213a violated the National Agreement. Counts II–IV alleged that ¶ 213a violated Delaware law.

In December 1980 Local 435 also filed a grievance pursuant to §§ 28–55 of the National Agreement, challenging ¶ 213a (the "grievance"). On May 20, 1982, the grievance was settled and withdrawn without prejudice to either party. Under § 53 of the National Agreement, this constituted a final and binding resolution of the grievance.

On December 9, 1982, the District Court dismissed the action before it on the grounds that settlement of the grievance barred Local 435's federal claims. The District Court then declined to exercise pendent jurisdiction over the state law claims. *Local 435 v. General Motors Corp.*, D.Del., 552 F.Supp. 395 (D.Del.1982).

The U.S. Court of Appeals for the Third Circuit affirmed the dismissal of count I. The

Court vacated the dismissal of counts II–IV and remanded the case for entry of final judgment dismissing those counts as mooted by intervening action of the Delaware General Assembly to amend the definition of wages under the Delaware Unemployment Compensation Act to include "holiday pay"—for the stated purpose of preventing employees from obtaining in future layoffs a so-called double recovery. *Local 435 v. General Motors Corp.*, 3d Cir., 720 F.2d 664 (1983).

On September 27, 1983, the District Court entered a final judgment dismissing counts II–IV. *Local 435 v. General Motors Corp.*, D.Del., No. 80–578 (Sept. 27, 1983).

**7.** Section 3371 provides, in part:

(a) Any agreement by an individual to waive, release or commute his rights to benefits or any other rights under this chapter shall be void.

\* \* \*

(c) No employer shall directly or indirectly make or require or accept any deduction from wages to finance the employer's assessments required from him, require or accept any waiver of any right hereunder by an individual in his employ, willfully or intentionally discriminate in regard to the hiring or tenure of work on any term or condition of work of any individual on account of his claiming benefits under this chapter or in any manner obstruct or impede the filing of claims for benefits.

19 *Del.C.* § 3371 (1974).

At the time *Moore* was decided, holiday pay was not included in the list of items excluded from the statutory definition of wages. *See* 19 *Del.C.* § 3302(17) (1953). The Court then reasoned that holiday pay represented "pay" and thus was a form of compensation or emolument for personal services otherwise rendered. Hence, holiday pay constituted "wages" earned under 19 *Del. C.* § 3302(16) (1953) and was required to be deducted from unemployment benefits otherwise due for the same period under 19 *Del.C.* § 3313(c) (1953). The Court's ruling was premised upon the prevailing view of public policy in Delaware as well as other states, including Michigan and Connecticut.

The General Assembly quickly reacted to the *Moore* decision. In 1961, the Legislature amended 19 *Del.C.* § 3302(17) (1953) by adding subsection (E) to expressly exclude holiday pay from the statutory definition of "wages." 53 *Del.Laws* c. 158, codified at 19 *Del.C.* § 3302(17)(E) (Cum.Supp. 1970);[8] *see also General Motors Corp. v. Crishock,* Del.Supr., 287 A.2d 648, 650 (1972) ("the Amendment of 1961 was a direct legislative reaction to the *Moore* decision"); *Employment Security Comm'n v. Watts,* Del.Supr., 254 A.2d 230, 231 (1969).

■ To be eligible for unemployment benefits a person then needed only to be "unemployed" and not otherwise disqualified for benefits. 19 *Del.C.* § 3314 (1974). To be unemployed in any week, a claimant must have neither performed services nor have been entitled to receive wages for that week. 19 *Del.C.* § 3302(16) (1974). As a consequence of the 1961 legislative reaction to *Moore,* "holiday pay paid during any period of unemployment" did not constitute wages. *See* 19 *Del.C.* § 3302(18)(E) (1974). Therefore, during the 1981–82 Christmas holiday layoff, the GM hourly employees were entitled to receive both holiday pay and unemployment compensation. *Accord Crishock,* 287 A.2d at 651–52.

**B**

■ Superior Court found paragraph 213a violative of section 3371(c) in two respects: (1) that paragraph 213a requires an employee to waive his or her unemployment benefits, contrary to section 3371(c); and (2) that paragraph 213a represents a scheme or device for willful or intentional discrimination against an employee seeking to collect unemployment compensation over a holiday layoff period. While GM's appeal contests both findings by Superior Court with respect to section 3371(c), since we affirm, we limit our discussion to the second of Superior Court's two grounds for declaring paragraph 213a to be unenforceable; namely, that the contractual provision violates the discrimination clause of section 3371(c).

Section 3371(c) states that an employer shall not "willfully or intentionally discriminate" as to the terms or conditions of work on the basis of an employee's claim for unemployment benefits. 19 *Del.C.* § 3371(c) (1974). GM makes the following related arguments to sustain its position that paragraph 213a of the National Agreement does not violate section 3371(c). GM first construes section 3371(c) as intended "to prohibit employers from discouraging [employees from] exercise of [their statutory] rights by taking or threatening to take adverse action against those employees who claim benefits." GM says that paragraph 213a does not "willfully or intentionally discriminate" because GM's purpose in providing for a holiday pay offset is, as Superior Court found, "to treat all employees equally and maintain the spirit of the unemployment compensation laws." Thus, the intent of paragraph 213a and of Delaware's Unemployment Compensation Law is the "same," GM reasons. The underlying purpose of both contract and statute is to provide employees with benefits for unemployment, but not to permit them a "windfall." *See Watts,* 254 A.2d at 232. Therefore, GM concludes, paragraph 213a of the National Agreement should be sustained. The argument is deceptively sim-

**8.** Section 3302 was again amended, effective August 12, 1977. Subdivision (17) was redesignated as present subdivision (18), 61 *Del.Laws* c. 186, codified at 19 *Del.C.* § 3302(18) (1979), and remained in force until repealed in 1981 by 63 *Del.Laws,* c. 76. *See supra* note 2.

plistic both as to legislative intent and contractual effect. GM's equation of equal treatment of employees with a lack of intent to discriminate between employees begs the question of whether paragraph 213a works to discriminate against an employee who claims unemployment benefits while receiving holiday pay during a period of layoff.

The purpose of section 3302(17)(E) was to declare that holiday pay should not be treated as wages for purposes of determining eligibility for compensation benefits. Its purpose was not to bar double compensation.[9] The purpose of paragraph 213a is to countermand that result by contract stipulation: that holiday pay received will be "treated as remuneration" by any employee who "supplements his Holiday Pay by claiming ... unemployment compensation benefit[s]." The necessary consequence of claiming statutory benefits is a waiver of contractual benefits. GM justifies this result by asserting that the offset clause simply "integrates" [or "coordinates"] its holiday pay benefits with State unemployment benefits to eliminate double compensation and achieve equal treatment of all employees. However, *Crishock* dispatches the assumption that public policy was opposed to double compensation. Thus, paragraph 213a clearly works at cross-purposes to 19 *Del.C.* § 3302(18)(E) (1974).[10]

Paragraph 213a represents a rather ingenious effort by contract to circumvent this State's public policy concerning holiday pay that was the law for some twenty years, from 1961 through 1981. Public policy favored double compensation in the sense of disregarding holiday pay benefits in determining eligibility for unemployment compensation benefits.

The clear consequence of paragraph 213a is to work an offset of unemployment benefits from holiday pay to the extent there would be an overpayment of unemployment benefits if holiday pay were treated as remuneration for the week. GM's "integration of benefits" argument is simply a syllogism, a specious form of deductive reasoning from a false premise as to social policy then in force. If GM's argument as to public policy were correct, the statute would not have been changed by the Delaware General Assembly in 1981. Today and since the repeal of 19 *Del.C.* § 3302(18)(E) (1974), an employee's receipt of holiday pay would disqualify him from receiving unemployment compensation benefits or would subject those benefits to offset. 19 *Del.C.* §§ 3302(17), 3313. However, until the General Assembly so acted, the parties could not by contract provide otherwise.

Paragraph 213a of the National Agreement was clearly entered into by GM for the purpose of circumventing legislative will and reinstating the philosophy of *Moore.* Paragraph 213a discriminates against employees applying for unemployment compensation over the Christmas holiday shutdown by requiring such employees to reduce their holiday pay benefits by the amount received as unemployment compensation. In contrast, an employee who does not seek unemployment benefits, but who may happen to receive supplemental income from a temporary job during his layoff, is not required to offset his holiday pay by the amount of salary received. Simply stated, those employees who seek unemployment benefits forfeit holiday pay, while those who relinquish unemployment benefits receive holiday pay.

Paragraph 213a may only be viewed as working a willful or intentional discrimination against employees claiming unemployment compensation benefits. The discrimination results from a retaliatory scheme

---

9. This Court stated in *Crishock:*
   Anything stated in *Moore* inconsistent herewith must be deemed outmoded and superseded by the subsequent enactment of the 1961 Amendment, especially insofar as *Moore* indicated that double compensation in the form of unemployment benefits and holiday pay for the same holiday was against the policy of the Law.
   287 A.2d at 651.

10. GM's reliance on *Watts* is also misplaced. What we deemed contrary to public policy in *Watts* was the receipt of double compensation by "payment of unemployment benefits to employees on normal vacation *not incident to layoffs....*" *Watts,* 254 A.2d at 232 (emphasis added); *Crishock,* 287 A.2d at 651. Here, the unemployment benefits were incident to a layoff period.

through collective bargaining of requiring an employee either to accept a waiver of entitled benefits or accept a reduction in holiday pay benefits otherwise payable. Therefore, we must find paragraph 213a of the National Agreement to be in violation of section 3371(c) of the Delaware Unemployment Compensation Law as discriminating against employees who apply for unemployment benefits to which they are entitled. *See* 19 *Del.C.* § 3371(c) (1974). Since we find 213a to be void and unenforceable because discriminatory in violation of section 3371(c) of the Delaware Workmen's Compensation Act, we are not required to address the alternate prong of GM's appeal—that 213a does not constitute a prohibited "waiver" of an employee's compensation rights under section 3371(c), as Superior Court ruled.

### C

■ We next consider Local 435's crossappeal on the liquidated damages issue. Local 435 contends that holiday pay falls within the definition of wages for the purposes of the Wage Payment Act. Local 435's theory is that wages should be liberally defined. In support of its theory, Local 435 relies primarily on authority from other jurisdictions and upon the fact that for purposes of federal and state withholding taxes, social security, union dues, and all other deductions, holiday pay is identical to ordinary hourly pay. Further, under the 1978 Bankruptcy Act, holiday pay was considered wages. In light of the clear statutory language of the Wage Payment Act, we find these arguments unpersuasive.

The liquidated damages provision of the Wage Payment Act applies when an employer withholds "wages" without any reasonable grounds for dispute. *See* 19 *Del.C.* § 1103(d) (1979). "Wages" is defined in section 1101(a)(2) as "compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, commission or other basis of calculation." 19 *Del.C.*

§ 1101(a)(2). Then, in section 1109(b), "benefits or wage supplements" are defined as "compensation for employment *other than wages,* including ... *holiday pay....*" 19 *Del.C.* § 1109(b) (emphasis added). The statutory language is clear and unequivocal—holiday pay is compensation other than wages.

Though "wages" has been defined differently under various chapters within Title 19,[11] we think the General Assembly would not attach differing and inconsistent meanings within the same chapter. We do not believe that the General Assembly intended to include holiday pay as wages for most of chapter 11, but exclude it from wages for section 1109 purposes only. We must assume that the General Assembly intended to use the term wages consistently throughout chapter 11 of Title 19. We, therefore, affirm the decision of the Superior Court and hold that holiday pay is not included as wages under the Wage Payment Act.

### D

■ The final issue is whether section 301 of the LMRA preempts application of Delaware's Unemployment Compensation Law and the Wage Payment Act to the instant suit. That issue was not raised in Superior Court and is, therefore, not now properly before this Court. *See* Supr.Ct.R. 8. Rule 8 permits only questions fairly presented at trial to be considered on appeal, except, when the interest of justice so requires, the Court may consider an issue not so presented. *Id.* In this case, justice requires that we decline to hear the issue. As previously noted, this case has been in litigation for over seven years. In Federal Court, GM filed a motion to dismiss Local 435's complaint for lack of federal subject matter jurisdiction. The District Court agreed with GM and dismissed the case. Now, after Local 435 has refiled in state court essentially the same claims that were dismissed in the federal action for lack of federal jurisdiction, GM seeks to apply federal law. GM's successful challenge of

---

11. For example, 19 *Del.C.* § 2302(a) defines wages as "the money rate at which the service rendered is recompensed...." 19 *Del.C.* § 3302(17) defines wages as "remuneration for personal services." Both sections exclude certain items from the definition. *See* 19 *Del.C.* §§ 2302(a) and 3302(17), (18).

federal subject matter jurisdiction in the District Court exposes GM's awareness of this argument at trial.

This Court will not hear an issue so clearly available to GM at trial. Its failure to raise the issue in Superior Court lacks any satisfactory explanation. Accordingly, we hold that GM's claim of federal preemption on appeal is barred by GM's failure to timely raise the issue at trial.

### III

In conclusion, we hold that application of paragraph 213a of the National Agreement discriminates against GM employees claiming unemployment benefits and is in contravention of 19 *Del.C.* § 3371(c). We further hold that holiday pay does not fall within the definition of wages under the Wage Payment Act. 19 *Del.C.*, c. 11 (1979). Local 435, therefore, is not entitled to liquidated damages for GM's wrongful refusal to remit holiday pay to its Local 435 employees. Finally, we hold that GM's federal preemption argument is barred under Supreme Court Rule 8 for GM's failure to timely raise the issue at trial.

\* \* \*

AFFIRMED.

